THOMAS B. LOCKWOOD et al., Respondents, *v*. THE TITLE INSURANCE COMPANY OF NEW YORK, Appellant.

Contract — title guarantee and insurance — error in search and abstract of title — when contract to pay damages caused by error if injured party refrain from suing title company not enforceable — when subsidiary company of title insurance company not authorized to make such contract.

Defendant, a title insurance corporation, which made a search and abstract of title of property taken in condemnation proceedings, erroneously certified that a certain mortgage covered and incumbered a parcel of land owned by plaintiffs and in consequence thereof the award for such land was made to the holder of the mortgage and not to the plaintiffs. Thereafter the vice-president, who was also one of the managing directors of a local title and guarantee corporation, which was permitted by defendant to be designated and known as its " Buffalo branch," assuming in good faith that he had power to act for defendant, made an agreement with plaintiffs that if they would refrain from suing the defendant and would allow it to institute any proceedings which might be deemed proper for the purpose of securing the moneys which should have been paid to plaintiffs the defendant would pay to plaintiffs the damages which they had suffered as a result of the error in the search. The

plaintiffs carried out their part of the agreement and permitted the proceedings to correct the error to be brought by the purported agent of the defendant. These proceedings failed and the defendant has repudiated its liability under the agreement, made in its behalf with plaintiffs, upon the ground that its purported agent had no real or apparent authority to make the agreement. *Held*, upon examination of the record in this action brought by plaintiffs to enforce the agreement and for damages, that the evidence does not justify the conclusion that the Buffalo corporation as a branch of defendant was actually or constructively authorized, to make an unusual contract like the one in question, settling claims against the defendant for errors in searches which the latter had furnished; hence, the vice-president of the Buffalo corporation did not have either real or apparent authority to make the contract.

*Lockwood* v. *Title Ins. Co.*, 163 App. Div. 929, reversed.

(Argued March 14, 1917; decided April 6, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 8, 1914, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Burnett Wright, Jr.*, for appellant. The defendant never agreed to pay the plaintiffs' grade crossing award. A corporation can only act through its officers or duly accredited agents. It cannot be bound by a person assuming authority. One seeking to hold a corporation liable on a contract has the burden of proving that the person making the contract for the corporation had the authority to do so. (*Wilson* v. *K. C. E. R. R. Co.*, 114 N. Y. 487; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *Risley* v. *I. B. & W. R. Co.*, 1 Hun, 202; *Camacho* v. *Hamilton Co.*, 2 App. Div. 369; *Matter of Jefferson Casket Co.*, 182 Fed. Rep. 689; *C. F. M. Society* v. *Oussani*, 215 N. Y. 1; *Dailey* v. *Stoll*, 211 N. Y. 74; *De Bost* v. *Albert Palmer Co.*, 35 Hun, 386; *Lord* v. *U. S. Transportation Co.*, 143 App. Div. 437.)

The words " vice president " written after Mr. Clinton's
signature created no authority to make contracts for the
defendant. (*Marvin* v. *Wilber*, 52 N. Y. 270; *People's
Bank* v. *St. Anthony's R. C. Church*, 109 N. Y. 512;
*Leary* v. *Albany Brewing Co.*, 77 App. Div. 6; *Sanford*
v. *Fountain*, 49 Misc. Rep. 301.)   A member of a board
of managers cannot act for a corporation. (*C. F. M.
Society* v. *Oussani*, 215 N. Y. 1; 2 Purdy's Beach on
Priv. Corp. 715; Morawetz on Corp. § 531; *People's Bank*
v. *St. Anthony's R. C. Church*, 109 N. Y. 512; *Caldwell*
v. *M. R. F. L. Assn.*, 53 App. Div. 245.)

*Joseph G. Dudley* for respondents.   The defendant, by
its conduct, intentionally or by want of ordinary care, had
caused Mr. Clinton to have apparent authority to make
this contract.   The plaintiffs were innocent third parties,
therefore had a right to rely thereon, and the defendant
is estopped to deny Mr. Clinton's authority. (*Rathbone* v.
*Snow*, 123 N. Y. 343; *Merchants' Bank* v. *State Bank*, 10
Wall. 604; *Peoples Bank* v. *M. Nat. Bank*, 101 U. S.
181; *Southern Life Ins. Co.* v. *McCain*, 96 U. S. 84;
*Wilson* v. *K. C. E. R. R. Co.*, 114 N. Y. 487; *Young* v.
*U. S. Mtge. & Trust Co.*, 214 N.Y. 279; *Peck* v. *Dexter
Sulphite Pulp & Paper Co.*, 164 N. Y. 127.)

HISCOCK, Ch. J.   Plaintiffs were the owners of adjoin-
ing parcels of land situate in the city of Buffalo and title
to which was acquired by the grade crossing commission
in condemnation proceedings.   One of these parcels was
unincumbered; the other was incumbered by two mort-
gages which in the aggregate amounted to much more
than the value of the land and for the payment of which
mortgages the plaintiffs were not personally responsible.
The defendant, which makes abstracts of title and has its
principal place of business in New York city, furnished
the abstract of title for the commission for use in said
condemnation proceedings and it erroneously certified

that one of these mortgages covered the first and unincumbered parcel of land. As a consequence of this error the award made in the condemnation proceedings for the unincumbered parcel was directed to be paid to the holder of the mortgage, which the plaintiffs had no interest in paying and they lost all benefit of the award.

After this had taken place a purported agreement was made between the plaintiffs and defendant acting through one Clinton to the effect that if plaintiffs would refrain from suing the defendant and would allow it in their names to institute any proceedings which might be deemed proper for the purpose of correcting the award and for the purpose of securing the moneys which should have been paid to plaintiffs, the defendant would pay to to plaintiffs the damages which they had suffered as a result of the error in the search. Although this supposed agreement was carried out by the plaintiffs, they refraining from bringing suit against defendant and permitting Mr. Clinton to institute proceedings for the purpose of correcting the error which had been made, when these latter proceedings failed the defendant repudiated liability on the agreement made in its behalf by Mr. Clinton and the sole question presented upon this appeal is the one whether the latter did have real or apparent authority to bind it by the agreement which he attempted to make. There is no question that he acted in good faith and in the supposition that he had power to make the contract, and the repudiation by the defendant of his authority seems to be due simply to its desire to avoid liability for its error.

We are forced to the conclusion that he did not have such authority. It is necessary in the determination of this question first to consider the relations between the defendant and a corporation organized as the New York and Buffalo Title Company, for it is claimed in behalf of the plaintiffs that this relationship is of some importance in determining the authority of Mr. Clinton. It seems

to be argued that if this corporation possessed power to make the contract such power passed to Mr. Clinton, who was its vice-president. · While this Buffalo institution was a separate corporation the defendant undoubtedly did permit it to be known and designated as its "Buffalo branch," but we cannot find that it clothed it with authority, real or apparent, to make such a contract. Its actual relation with and authority to act for the defendant were set out in a written contract, and this authority pertained to the examination and insurance of titles to real estate and the isssuing of guaranteed searches for the defendant with the assumption of responsibility by the Buffalo company to the defendant in respect of such business as the former was permitted and authorized to do. This delegation of actual power clearly did not authorize the Buffalo corporation as a Buffalo branch or agency to make unusual contracts like the one in question settling claims against the defendant for errors in searches which the latter had furnished. Nor are we able to find any evidence that the. defendant by its course of conduct clothed the Buffalo corporation with such apparent authority as would include making in its behalf a contract like the one in question. It follows, therefore, that Mr. Clinton as a vice-president and one of the board of managers of the Buffalo corporation did not have authority to make the. contract.

But it is urged that the defendant in effect permitted Mr. Clinton to hold himself out in making this contract as one of its vice-presidents and managers and that as such officer he could bind it by the attempted contract.

It is a fact that Mr. Clinton in his negotiations with plaintiffs did describe himself as vice-president at various times. But he was not a vice-president of the defendant and the evidence indicates that plaintiffs through their representatives were advised of this fact rather than misled into thinking that he was such an officer of the

defendant. Mr. Clinton, himself, was permitted to testify that he was acting as vice-president of the Buffalo corporation and other evidence was furnished both by parol testimony and by a list of defendant's vice-presidents printed on its search and elsewhere, disclosing that others than Mr. Clinton were vice-presidents of the defendant. Therefore, in our judgment, it becomes unnecessary to consider whether a vice-president of the defendant without any actual authority would have had apparent authority to make such a contract as this was.

There is one other aspect of the evidence which may be briefly considered. On the title search was printed a list of a " Board of Managers " which included Mr. Clinton. As a matter of fact these men were managers of the Buffalo corporation and not of the defendant, but it is possible that a jury would have been permitted to say that this list was printed in such form upon defendant's search that persons like plaintiffs would have been justified in reading it as a list of the managers of the defendant. Undoubtedly that would have been a ·question of fact for a jury and not one to be disposed of by the court by a directed verdict. But even assuming that plaintiffs would have been authorized by defendant's conduct to assume that Mr. Clinton was one of a board of several managers, the question would remain whether plaintiffs in the absence of actual authority, which is not shown, would have been entitled to assume that such a manager had power to make such a contract as this where no apparent authority so to do had been conferred upon him by the corporation by a course of dealings. We think this question clearly must be answered in the negative. We do not think that any case can be found holding that a mere director of a corporation in the absence of actual or apparent authority is authorized to go forth and make unusual contracts, such as this one was, binding the corporation of which he is an officer.

As has been said, the verdict in this case was directed,

the court thereby of course holding that no inference opposed to plaintiffs'' theory could be drawn from the evidence. This was very far from being the case, as in our opinion the evidence did not even permit a jury to draw an inference as on questions of fact in favor of the plaintiffs.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

Collin, Cardozo, McLaughlin, Crane and Andrews, JJ., concur; Pound, J., not sitting.

Judgment reversed, etc.